UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**EFRAIN R.**[1]

    **Plaintiff,**

    **v.**                                                      Case No. 3:20-cv-0262
                                                                       Magistrate Judge Norah McCann King

**COMMISSIONER OF SOCIAL SECURITY,**[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Efrain R. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 12, *Defendant's Memorandum in Opposition*, ECF No. 15, *Plaintiff's Reply*, ECF No.16, and the *Certified Administrative Record*, ECF No 9. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

I. **PROCEDURAL HISTORY**

In May 2011, Plaintiff protectively filed his applications for benefits, alleging that he has been disabled since April 19, 2011, as a result of both physical and mental impairments. R. 190-91, 192-99.[3] This Court twice reversed the Commissioner's denials of those applications. *R[.] v. Comm'r of Soc. Sec.*, 3:17-cv-0416 (S.D. Ohio May 18, 2018), R.1342-47; *R[.] v. Social Sec. Adm.*, 3:14-cv-0463 (S.D. Ohio Dec. 8, 2015), R. 814-37. On April 12, 2019, following this Court's second order of remand, Administrative Law Judge ("ALJ") Gregory G. Kenyon held a third administrative hearing—his second—at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. R. 1320-41. In a decision dated June 20, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from April 19, 2011, his alleged disability onset date, through the date of that decision. R. R. 1284-1309. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 30, 2020. R. 1277-83. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 23, 2022, the case was reassigned to the undersigned. ECF No. 18. The matter is ripe for disposition.

II. **LEGAL STANDARD**

A. **Standard of Review**

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The

---

[3] References to pages in the Certified Administrative Record, using the pagination of that record, will be cited as "R. __."

2

findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other co8ntexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at / §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 40 years old on April 19, 2011, his alleged disability onset date. R. 1308. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since that date. R. 1290.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: coronary artery disease, residuals of two myocardial infarctions with stent placements, diabetes mellitus, early emphysema, osteoarthritis of the left knee, depression, and anxiety. R. 1291.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id.*

At step four, the ALJ found that Plaintiff had the RFC to perform a limited range of sedentary work. R. 1294. The ALJ also found that this RFC did not permit the performance of any past relevant work. R. 1307.

At step five, and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g.,* jobs as a touch-up inspector, table worker, and printed circuit board touch-up screener–existed in the national economy and could be performed by Plaintiff. R.

1308. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from April 19, 2011, his alleged disability onset date, through the date of the decision. R. 1309.

Plaintiff disagrees with the ALJ's decision, arguing specifically that the ALJ failed to properly evaluate the opinion of Plaintiff's treating psychotherapist, Stacy Solhein, D.O. *Plaintiff's Statement of Errors*, ECF No. 12; *Plaintiff's Reply*, ECF No. 16. He asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Memorandum in Opposition,* ECF No. 15.

IV.     **RELEVANT EVIDENCE**

Although the ALJ found that Plaintiff suffers from both physical and mental impairments, Plaintiff limits his challenge to the ALJ's decision to only the ALJ's consideration of his mental impairments and, specifically, to the ALJ's evaluation of the opinion of Plaintiff's treating psychotherapist, Dr. Solhein. The Court will therefore similarly limit its discussion to that issue.

Plaintiff testified at the first administrative hearing, in 2013, that he was diagnosed with posttraumatic stress disorder after his first heart attack and the placement of two stents. R. 51. Since then, he worries regularly about having a second heart attack. R. 49. He cannot concentrate. R. 45. The medication prescribed by Dr. Solhein helps, R. 50, but there are days when he does not want to get out of bed. R. 48. He testified at the 2016 administrative hearing

that, since the earlier hearing, he had suffered a second heart attack and a third stent had been placed. R. 768. He continued to suffer from depression and anxiety on a daily basis. R. 771. He has difficulty being around other people; he leaves his house once per week and has one remaining friend. R. 772. He experiences crying spells and "sometimes" has trouble concentrating. R. 773. Treatment has been "slightly" helpful, but Celexa is no longer as helpful as it had been. R. 774, 781 ("I'm still having problems."). At the third administrative hearing, in 2019, Plaintiff testified that he continues to experience panic attacks two or three times per week. R. 1329. When he leaves the house, to go to doctors' appointments or to the grocery, he stays to himself to avoid other people. R. 1330. He does have friends, although he no longer socializes. R. 1330-31. He still suffers from depression. R. 1331.

In April 2012, Mary Ann Jones, Ph.D., performed a consultative psychological examination of Plaintiff at the request of the state agency. R. 569-75. Plaintiff described his mental health as "poor," and he reported anxiety, depression, anger and irritability, mood swings, panic symptoms, memory and concentration problems, and difficulty coping with stress. R. 571. He also reported that his memory and comprehension were "okay," although they had worsened somewhat since his heart attack. His concentration was "not good." R. 572. He reported that he was not at the time undergoing therapy but he was taking prescribed psychotropic medications. R. 573. On clinical examination, Plaintiff was cooperative; his conversation and thought were appropriate. R. 571. His presenting demeanor was resigned and dysphoric and his affect was sad. *Id*. He reported no difficulty functioning in large groups but he acknowledged anxiety over "a simple twinge in his chest." R. 572. He was preoccupied with his symptomatology and evidenced a degree of confusion. *Id*. He was oriented but distracted. *Id*. Dr. Jones diagnosed psychological factors affecting physical condition, generalized anxiety disorder, and depressive

7

disorder, nos. R. 574. She placed Plaintiff's GAF score at "51 (moderate symptoms)." R. 574.[4] In assessing Plaintiff's functional limitations, Dr. Jones opined that Plaintiff "would be able to understand, remember, and follow instructions in a work setting commensurate with" a borderline range of intellectual functioning; "[t]here does appear to be at least some impairment in his ability to maintain attention and concentration and to maintain persistence and pace;" "there does appear to be at least some subjective sense of impairment" in the area of responding appropriately to supervision and to coworkers in a work setting; and "there appears to be at least some impairment in his ability to cope with common workplace pressures." R. 575.

In May 2012, state agency psychologist Aracelis Rivera, Psy.D., reviewed the record, including Dr. Jones's report, and opined that the record documented affective disorders, anxiety-related disorders, and somatoform disorders. R. 90. However, Dr. Rivera opined that Plaintiff had only a mild restriction of activities of daily living and difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace; he had no repeated episodes of decompensation. R. 91. According to Dr. Rivera, Plaintiff can perform simple, one to two step tasks, can attend to tasks in an environment that does not contain frequent interruptions and does not require prioritizing of tasks, can interact "superficially" with others, and can perform in a job where changes can be introduced gradually, and can be explained. "There should be direction from the job as to what is expected of" him. R. 95-96.

Dr. Solhein treated Plaintiff from December 22, 2011 to February 27, 2014, for a total of

---

[4] A GAF score is a clinician's subjective rating of an individual's overall psychological functioning. *See Kornecky v. Comm'r of Soc. Sec.,* 167 Fed. Appx. 496, 503 (6th Cir. 2006) (explaining that a "GAF of 51–60 indicates moderate symptoms.") The Commissioner "has declined to endorse the [GAF] score for 'use in the Social Security and SSI disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *DeBoard v. Comm'r of Soc. Sec.,* 211 Fed. Appx. 411 (6th Cir. 2006) (*quoting Wind v. Barnhart,* 133 Fed. Appx. 684,691-92 n. 5 (11th Cir. 2005) (quoting 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)).

63 sessions. R. 1259.[5] Her progress notes reflect diagnoses of major depressive disorder, moderate, single episode, and PTSD. Her notes include numerous findings that Plaintiff was doing well and was oriented; his mood, insight, and judgment were "[g]ood," "great," or "OK," and his affect was euthymic or "slightly dysphoric." *See, e.g.,* R. 667 (June 5, 2013), R. 668 (May 29, 2013), R. 669 (May 15, 2013), 671 (May 1, 2013), 672 (April 10, 2013), 675 (March 20, 2013), 678 (February 27, 2013), 682 (January 9, 2013), 683 ("Better," January 2, 2013), 684 (December 19, 2012), 687 (November 21, 2012), 688 (November 14, 2012), 692 (October 10, 2012), 696 (September 5, 2012), 696 (August 15, 2012), 699 (August 1, 2012), 700 ("Pt coping well," July 25, 2012), 702 (July 11, 2012), 703 (June 29, 2012), 704 (June 21, 2012), 705 (June 13, 2012), 709 (May 17, 2012), 710 (May 3, 2012), 711 (April 26, 2012), 713 (April 11, 2012), 717 (March 15, 2012), 718 (March 9, 2012), 719 (March 1, 2012), 721 (February 16, 2012), 724 ("Better," January 26, 2012), 725 (January 19, 2012), 726 (January 12, 2012), 728 (December 29, 2011), However, Dr. Solhein's treatment notes also include a fewer number of less positive findings. *See, e.g.,* R. 676 ("Not so good" mood on March 13, 2013), 681 ("Not good" on January 30, 2013), 693 ("Depressed," September 26, 2012), 694 ("Not in my right mind," September 12, 2012), 712 ("Rough" April 19, 2012), 716 ("A little down," March 23, 2012), 720 ("Angry," February 23, 2012), 729 ("Depressed," December 22, 2011). Plaintiff's treatment ended in February 2014 "due to completion of treatment" and his prescription for treatment of insomnia was transferred to his primary care provider. R. 1259.

In May 2013, Dr. Solhein completed a mental impairment questionnaire in which she indicated that Plaintiff's diagnoses consist of major depressive disorder, moderate, single

---

[5] Dr. Solhein was apparently a medical resident at the time of Plaintiff's treatment; her treatment notes are also signed by other physicians. R. 1259.

episode, and PTSD. R. 653. His then-current GAF was 60, and his highest GAF in the prior year had been 70. *Id*. Signs and symptoms supporting her diagnoses included sleep and mood disturbance, anhedonia, feelings of guilt or worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, decreased energy, intrusive recollections of a traumatic experience, and hostility and irritability. R. 653. Dr. Solhein opined that Plaintiff "is unable to cope with life stressors due to his current mental state," as reflected in "recurrent decompensations w/ dysphoric (sad) mood, increased anxiety and difficulty maintaining his typical life activities." R. 654. Although Plaintiff's condition had improved with psychotropic medication and weekly therapy, Dr. Solhein stated that Plaintiff continued to struggle with intrusive thoughts, anxiety, and depressed mood. R. 654. His condition was likely to improve with continued treatment, "but this will require a long term commitment to the treatment plan." R. 654. Moreover, according to Dr. Solhein, Plaintiff's psychiatric condition exacerbates his experience of pain or other physical symptoms. *Id*. Dr. Solhein also opined that Plaintiff's condition or treatment would cause him to be absent from work about twice a month and be distracted by psychological symptoms ½ of an 8-hour work day. R. 655. Finally, Dr. Solhein stated that Plaintiff had no restrictions of activities of daily living, slight deficiencies of concentration, persistence or pace, and moderate difficulties in maintaining social functioning and episodes of deterioration or decompensation in work. *Id.*

**V.    DISCUSSION**

An ALJ must consider all medical opinions in evaluating a claimant's applications for benefits. 20 C.F.R. §§ 404.1527(c), 416.927(c). Under the regulations applicable to claims, like Plaintiff's, filed before March 27, 2017, the opinion of a treating provider must be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), (4),  416.927(c)(2), (4). The Commissioner must provide "good reasons" for discounting the opinion of a treating provider, and those reasons must both enjoy support in the evidence of record and be sufficiently specific to make clear the weight given to the opinion and the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec*, 710 F.3d 365, 376 (6th Cir. 2013); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)(citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5).

If the treating source opinion is not accorded controlling weight, the ALJ must then consider the following factors in deciding the weight to be given to any medical opinion, including that of the treating source: the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, the specialization of the source rendering the opinion, and other factors that "tend to support or contradict the medical opinion." 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). However, a formulaic recitation of factors is not required. *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits a claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

In the case presently before the Court, the ALJ exhaustively reviewed the evidence relating to the treatment of and opinions regarding Plaintiff's mental impairments. R. 1300-06. In considering the opinions reflected in the record, the ALJ expressly referred to the controlling regulations, R. 1305, but found that Dr. Solhein's opinion was not entitled to either controlling or even deferential weight under those regulations:

11

[Her opinion is] not fully supported by the record. Instead, the undersigned gives little weight to Dr. Solhein's opinion. Dr. Solhein opined the claimant would be absent about twice per month and distracted about half of an eight-hour workday. Nevertheless, Dr. Solhein opined the claimant had no more than moderate limitations when evaluating the claimant under the prior psychiatric review technique. The undersigned recognizes that Dr. Solhein established as [sic] a significant treating relationship with the claimant. At the time her opinion was provided, Dr. Solhein had seen the claimant forty-seven times. She saw him a total of 63 times between 2011 and 2014 for about forty-five to fifty minutes each time. He started off with good attendance on an almost weekly basis, but his attendance waned after the first year. However, despite the length and frequency of the relationship, Dr. Solhein's opinion is not entitled to controlling or deferential weight because it is both unsupported by and inconsistent with the evidence. First, Dr. Solhein's opinion is internally inconsistent. She explained her excessive limitations by noting the claimant's decompensation and difficulty maintaining typical life activities, but she later stated that he had no more than moderated episodes of deterioration with no restrictions in activities of daily living. She also noted that the claimant's GAF was 60 when she provided her opinion, which suggests moderate symptoms and limitations and is borderline with only mild symptoms. She further noted that the claimant's highest GAF score was 70, suggesting mild and borderline transient symptoms and limitations. While a GAF score is inherently limited and only represents a snap shot in time, those reflected in her opinion are more consistent with the no more than moderate findings in the psychiatric review technique than the excessive absenteeism and off-task findings. Dr. Solhein's treatment notes also do not support her excessive limitations. He frequently reported improvement in his anxiety and depression with no significant abnormalities noted on his mental state examinations, often presenting with at least a "good" mood. Most mood downturns were associated with significant stressors, such as his son's legal troubles. Nevertheless, the claimant consistently presented with good insight and judgment that would not support limitations as extreme as those opined by Dr. Solhein. A statement from Dr. Solhein's supervisor indicated that the claimant stopped therapy due to "completion of treatment," further indicating that the claimant's limitations were not as exessive as opined by Dr. Solhein. Though he took medication on and off throughout the record, he did not require significant psychological intervention after he stopped treatment with Dr. Solhein, but he was able to function better than suggested by her opinion. For example, her [sic] performance during her [sic] psychological consultative examination is indicative of a greater level of functioning than suggested in Dr. Solhein's opinion regarding time off task and absenteeism. Additionally, November 2018 primary care notes show that "he is working … and feels good." When he restarted medication in February 2019, his PHQ-9 score was only nine, demonstrating only mild depression. Thus, Dr. Solhein's opinion is internally inconsistent, and it is not supported by her own records or other evidence in the record. Therefore, the undersigned gives her opinion little, and not controlling or deferential, weight.

R. 1305-06 (citations to the record omitted).

Instead, the ALJ gave "[s]ubstantial weight" to the opinion of Dr. Jones, the consultative examining psychologist:

> Dr. Jones opined the claimant is able to understand, remember, and follow instructions in a work setting commensurate with borderline intellectual functioning, though no formal testing was performed. She noted that there "appear[ed]" to be "some" impairment in the claimant's ability to maintain attention, concentration, persistence, and pace. There also appeared to be "some" subjective sense of impairment with interacting with others. Dr. Jones further opined that there "appears" to be "some" impairment in the claimant's ability to cope with common workplace pressures. Through it is somewhat vague in parts, Dr. Jones' opinion is nevertheless supported by her own examination and other evidence in the record, which consistently reflect adequate mental functioning despite the claimant's subjective complaints. For example, on examination, the claimant's contact with reality was judged as adequate. He was reasonably able to follow through with tasks after the initial direction. He was able to remember three out of three simple objects after an eighteen-minute interval, and he recalled six random numbers forward and five backward. He was able to perform simple, straightforward math tasks, including mental division. He was able to sustain reasonable attention and concentration during the interview, and he did not seem distracted by ambient office sounds. As such, his performance reflects mild to moderate limitations consistent with some situational anxiety and depression, which is consistent with Dr. Jones' opinion. The limitations opined by Dr. Jones have been accommodated by the restrictions in the residual functional capacity, and her opinion is clearly consistent with the ability to perform competitive work activities within the limits of those restrictions. Furthermore, the claimant's treatment notes reflect a similar level of functioning. He frequently reported improvement in his anxiety and depression with no significant abnormalities noted on his mental status examinations, often presenting with at least a "good" mood. Dr. Jones' opinion is supported by her own examination and is consistent with other evidence in the record. Combined with her specialization in psychology, it is appropriate to give her opinion substantial weight despite only examining the claimant one time.

R. 1304-05 (citations to the record omitted).

The ALJ also gave "[m]oderate weight" to the opinion of Dr. Rivera, the state agency reviewing psychologist:

> Using a prior psychiatric review technique, Dr. Rivera opined the claimant had moderate difficulties maintaining concentration, persistence, or pace with mild difficulties maintaining social function. Dr. Rivera opined the claimant was able

13

>to perform simple, one- to two-step tasks in an environment that does not contain frequent interruptions or require prioritizing tasks. Dr. Rivera opined the claimant was capable of superficial interaction. She further opined the claimant was able to perform a job where changes could be introduced gradually and explained, and there should be direction from the job as to what is expected of them. Though "superficial" is not a vocational defined term, the restrictions in the residual functional capacity for unskilled simple routine tasks and occasional contact with others would keep any social interaction sufficiently superficial. Dr. Rivera's opinion is supported by and consisted with the evidence in the record which consistently reflect adequate mental functioning despite the claimant's subjective complaints. For example, at his psychological examination, the claimant's contact with reality was judged as adequate. He was reasonably able to follow through with tasks after the initial direction. He was able to remember three out of three simple objects after an eighteen-minute interval, and he recalled six random numbers forward and five backward. He was able to perform simple, straightforward math tasks, including mental division. He was able to sustain reasonable attention and concentration during the interview, and he did not seem distracted by ambient office sounds. As such, his performance reflects mild to moderate limitations consistent with the restrictions opined by Dr. Rivera. The claimant's treatment notes reflect a similar level of functioning. He frequently reported improvement in his anxiety and depression with no significant abnormalities noted on his mental status examinations, often presenting with at least a "good" mood. Thus, Dr. Rivera's opinion is supported by and consistent with the evidence in the record. Combined with her specialization in psychology, it is appropriate to give her opinion substantial weight despite only reviewing the file and not examining the claimant.

R. 1303-04 (citations to the record omitted).

As noted above, Plaintiff disagrees with the ALJ's evaluation of Dr. Solhein's May 2013 opinion. Plaintiff first complains that the ALJ erred in rejecting Dr. Solhein's opinion on the basis that the opinion is not "fully supported by the record." R. 1305. The Court notes that the ALJ expressly recognized the proper governing regulations, including the standard that must be applied to a treating source opinion. R. 1305 ("If a treating source's medical opinion is well supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight."). Although the ALJ, at one point, seemed to suggest that Dr. Solhein's opinion must be "fully" supported in order to be given controlling weight, a fair reading of the ALJ's decision in its entirety makes clear that his unfortunate turn of phrase was not

determinative to his analysis and evaluation of this treating source's opinion. Rather, the ALJ reviewed in detail Dr. Solhein's treatment records and opinion, as well as all the other evidence of record, before concluding that her opinion "is internally inconsistent, and it is not supported by her own records or other evidence in the record." R. 1306. This conclusion enjoys substantial support in the record and complied with the governing regulations.

Plaintiff also argues that the ALJ failed to recognize the length of Dr. Solhein's treatment relationship with Plaintiff. *Plaintiff's Statement of Errors*, ECF No. 12, PageID# 2308. To the contrary, however, the ALJ expressly recognized this factor. R. 1305 ("The undersigned recognizes that Dr. Solhein established as [sic] a significant treating relationship with the claimant. At the time her opinion was provided, Dr. Solhein had seen the claimant forty-seven times. She saw him a total of 63 times between 2011 and 2014 for about forty-five to fifty minutes each time.").

Plaintiff also contends that the ALJ unfairly engaged in "picking and choosing" only selective treatment notes in evaluating Dr. Solhein's opinion. *Plaintiff's Statement of Errors*, ECF No. 12, PageID# 2308. This Court disagrees. It is true, as this Court's summary of the evidence reflects, that Dr. Solhein's treatment notes include some references to "dysphoric" and "not so good" mood, as well as other negative findings. However, in light of the very substantial conflicting references in her treatment notes, the ALJ did not engage in any prohibited "cherry-picking" of the evidence. Rather, the ALJ's evaluation of Dr. Solhein's treatment notes reflects the very exercise of discretion vested in ALJs to weigh the evidence in the record. *See White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 284 (6th Cir. 2009) ("But we see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence."). *See also DeLong v. Comm'r of Soc. Sec.,* 748 F.3d 723, 726 (6th Cir.

15

2014) (agreeing that an allegation that the ALJ unfairly "cherry-picked" the record is seldom successful because crediting it would require a court to re-weigh record evidence). The ALJ did not err in this regard.

Similarly, this Court is not persuaded by Plaintiff's contention that the ALJ erred in characterizing Dr. Solhein's opinion as inconsistent with Dr. Jones's opinion. Dr. Jones opined that Plaintiff's mental impairments cause some limitation of function and the ALJ accommodated that limitation of function in the RFC. The ALJ's finding that Plaintiff's performance during his psychological consultative examination by Dr. Jones "is indicative of a greater level of functioning than suggested in Dr. Solhein's opinion regarding time off task and absenteeism," R. 1306, enjoys substantial support in the record.

Plaintiff also complains that the ALJ erred in referring to GAF scores, which indicated no greater than moderate dysfunction. *Plaintiff's Statement of Errors*, ECF No. 12, PageID# 2308-09. The reference to these scores was but one factor among many articulated by the ALJ in support of his finding that Dr. Solhein's opinion was not supported by her own treatment records and was inconsistent with the evidence. Moreover, even the ALJ acknowledged that "a GAF score is inherently limited and only represents a snapshot in time…." R. 1306. The ALJ's reference to Dr. Jones' GAF scores will not serve as a basis for reversal.

In short, the Court concludes that the ALJ's evaluation of Dr. Solhein's opinion is adequately explained, is supported by substantial evidence, and complied with the governing regulations.

## VI.     CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

16

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  September 6, 2022                              *s/Norah McCann King*
                                                      NORAH McCANN KING
                                            UNITED STATES MAGISTRATE JUDGE